Joshua R. Stock, Esq. SBN 210335
STOCK LAW CORPORATION
9279 Research Drive
Irvine, CA 92618
(714) 272-0706
(888) 573-9255 e-fax
jstock@stocklawcorp.com

Attorney for Plaintiff
HDWEBSOFT Co., Ltd.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

HDWEBSOFT CO., LTD,

               Plaintiff,

v.

SKYLAB APPS, INC; and DOES 1-10, inclusive,

               Defendants.

Case#:   **'17CV1081 BEN JMA**

**COMPLAINT FOR:**

**(1) BREACH OF CONTRACT**

**(2) COMMON COUNT: GOODS & SERVICES RENDERED**

      Plaintiff is informed and believes and thereon alleges the following:

//

//

1

## THE PARTIES

1.      Plaintiff HDWEBSOFT CO., LTD. ("Plaintiff") is a corporation incorporated under the laws of the country of Vietnam.  Plaintiff's principal place of business is in Ho Chi Minh City, Vietnam.

2.      Defendant SKYLAB APPS, INC. ("Defendant") is a corporation incorporated under the law of the state of Delaware.  Defendant's principal place of business is in Encinitas, California.

3.      Defendant DOES 1-10, inclusive, are sued herein under fictitious names.  Their true names and capacities are unknown to the Plaintiff.  When their true names and capacities are ascertained, Plaintiff will seek leave of the court to amend this Complaint to insert their true names and capacities herein.  Plaintiff is informed and believes, and on that basis, alleges, that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those Defendants.

4.      Each of the Defendants, including all Defendants sued under fictitious names, were the agent and employee of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of this agency and employment.

## BASIS FOR JURISDICTION

5.     The court has jurisdiction and venue of this action under 28 *U.S.C.* § 1332(a)(2), diversity jurisdiction.   Venue is proper in the Southern District of California under 28 *U.S.C.* § 1391(b)(1).

## GENERAL ALLEGATIONS

6.     Plaintiff is a business that provides software development.

7.     Defendant is a business that builds mobile apps.

8.     On or about January 21, 2016, Plaintiff contracted Defendant to provide software development services.   The terms & conditions of the contract are specified in an Independent Contract Services Agreement.     A copy of the Independent Contractor Services Agreement is attached to this Complaint as Exhibit 1.

9.     Pursuant to the agreement, Defendant retained Plaintiff to provide various software development services which included the development of a mobile app platform for Defendant that is the basis of Defendant's business model. Simply put, the platform developed by Plaintiff for the Defendant created a unique "plug-in" mobile app template that allows Defendant to quickly & efficiently build mobile apps for its clients.

10.     Also, pursuant to the agreement, the Plaintiff was to build a number of mobile apps for the Defendant by using the mobile app platform Plaintiff created.

11.    The agreement states that Plaintiff is to be paid $2,640 per month per contractor [developer].    The agreement further states that "As the date of this contract we have 13 contactors [developers] working at a rate of $34,320 per month along with a 10% discount tacked on leaving us with a total of $30,888 per month." (Independent Contractor Services Agreement, pg. 10)

12.    The terms of payment state that "For payment to be made contractors must meet the work agreed upon for each sprint (i.e., development stage)" and that the "Contractor shall submit invoices to Company upon completion of production release of Android, Web, and CMS Platforms." (Independent Contractor Services Agreement, pg. 10).

13.    Plaintiff met each "sprint" and was successful in developing the mobile app platform.    In addition, the Plaintiff successfully implemented the mobile app platform in its production of the following mobile apps: *Skylab*, *Allysian Science*, *Giver*, *XS Energy*, *Goodlovin*, and *Trilogy*.

14.    The mobile apps built by the Plaintiff for the Defendant were published to the app stores on June 23, 2016.    The final update and launch date of the mobile apps was September 9, 2016.    Between September 10-12, 2016, Plaintiff informed Defendant that Plaintiff would cease any further work for the Defendant until the Defendant paid Plaintiff's submitted invoices.    On September 19, 2016, Plaintiff received a Fedex from Defendant.    Enclosed in the Fedex was a

"Formal Notice of Termination / Cease & Desist" dated September 9, 2016.   The notice stated that no payment was due to [Plaintiff] as [Plaintiff] never produced a "public ready product."

15.   As of the date of this lawsuit, the Defendant continues to use the "plug-in" mobile app platform created by Plaintiff in the Defendant's production of mobile apps.

16.   As of the date of this lawsuit, the mobile apps built by Plaintiff have received excellent reviews and are currently still for sale in the app stores.

17.   To date, and despite repeated demands from the Plaintiff, the $222,800 in invoices remain unpaid.

## FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

### (Against All Defendants)

18.   Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

19.   Plaintiff has performed all conditions, covenants, and promises required to be performed on their part in accordance with the terms and conditions of the contract.

20.   Plaintiff alleges that Defendants breached the contract by failing to pay for software development service provided by Plaintiff.

21.   As a proximate result of Defendants' breach, Plaintiff has incurred damages in the amount of $222,800.

22.   Plaintiff has retained STOCK LAW CORPORATION to represent it in this matter and requests the Court to award Plaintiff its reasonable attorney's fees and costs.

## SECOND CAUSE OF ACTION

## COMMON COUNTS: GOODS & SERVICES RENDERED

### (Against All Defendants)

23.   Plaintiff incorporates by reference each and every allegation of the Complaint as though set forth in this cause of action.

24.   Defendants became indebted to Plaintiff in the sum of $220,800 for the services rendered to the Defendants as a result of Defendants specific request. No part of this sum has been paid, although demand for payment has been made. There is no due, owing and unpaid the sum of $220,880.

## PRAYER

WHEREFORE, Plaintiff prays judgment as follows:

1. For the sum of $220,800;

2. For attorney's fees, if allowed;

3. For interest in amount allowed by law;

4.  For costs of suit herein incurred;

5.  For such other and further relief as the Court may deem proper.

Dated: May 19, 2017                                    STOCK LAW CORPORATION

                                                       By: Joshua R. Stock, Esq.
                                                       Attorney for Plaintiff
                                                       HDWEBSOFT Co., Ltd.

# Exhibit 1

# INDEPENDENT CONTRACTOR
# SERVICES AGREEMENT

THIS INDEPENDENT CONTRACTOR SERVICES AGREEMENT ("*Agreement*") is made by and between ___Skylab Apps___ a ___California___ INC with an address of 6440 Sky Pointe Dr. STE 140-101 Las Vegas, Nevada 89131 ("*Company*") and ___HDWEBSOFT Co., LTD___ with an address ___Room 8, House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam___ ("*Contractor*"), effective this 1___ day of Jan___ 2016, (the "*Effective Date*") for the purpose of setting forth the terms and conditions under which Contractor will perform services for Company.  Company and Contractor may be referred to herein individually as a "Party," or collectively as the "Parties."  In consideration of the mutual obligations specified in this Agreement, and any compensation paid to Contractor for Contractor's services, the Parties agree to the following:

1. **Work, Payment And Term.**  Exhibit A contains a statement of the work performed or to be performed by Contractor, the payment terms for such work, the types of any expenses to be paid in connection with such work, any Background Technology (as defined in Section 3) to be used by Contractor in performing the work, the term of this Agreement, and such other terms and conditions as the Parties deem appropriate or necessary for the performance of the work.  Contractor shall perform all such work, and shall not engage the assistance of others except with the prior written consent of Company.

2. **Nondisclosure And Trade Secrets.**   During the term of this Agreement and in the course of Contractor's performance hereunder, Contractor may receive and otherwise be exposed to confidential or proprietary knowledge, data or information of Company (collectively referred to as "*Confidential Information*").   Confidential Information includes, but is not limited to, (i) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, software programs and subroutines, programs, methodologies, databases, database criteria, user profiles, scripts, algorithms, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques; (ii) information regarding research, development, new products, marketing and selling, business plans, budgets, financial statements, licenses, prices and costs, suppliers and customers; (iii) information about Company's security, including access codes, passwords, security protocols, system architecture, and/or employee or user identification; and (iv) information regarding the skills and compensation of employees of and other contractors to Company.   Contractor acknowledges the confidential and secret nature of the Confidential Information, and agrees that the Confidential Information is the extremely valuable property of Company.  Accordingly, Contractor agrees not to reproduce any of the Confidential Information in any format, not to use the Confidential Information except in the performance of the work described in this Agreement, and not to disclose all or any part of the Confidential Information in any form to any third party.

(a)    The obligations of subsection (a) above shall not pertain to any Confidential Information that Contractor can establish by competent written proof: (i) at the time of disclosure to Contractor is in the public domain or after disclosure, becomes part of the public domain, without any breach of this Agreement by Contractor; (ii) was in Contractor's possession at the time of disclosure by Company; or (iii) is received by Contractor from a third party with the right to disclose such information free from restriction on disclosure.

(b)    Company has received and in the future will receive from third parties confidential or proprietary information ("***Third Party Information***") subject to a duty on Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  Contractor agrees to hold Third Party Information in the strictest confidence, not to disclose Third Party Information to anyone (other than Company personnel who need to know such information in connection with their work for Company), and not to use Third Party Information except in the performance of the work described in this Agreement.

(c)    Upon termination of this Agreement for any reason, including expiration of the term of this Agreement, Contractor agrees to cease using and to return to Company all whole and partial copies and derivatives of the Confidential Information and any Third Party Information, whether in Contractor's possession or under Contractor's direct or indirect control.

(d)    Contractor shall not disclose or otherwise make available to Company in any manner any confidential information of Contractor or any confidential information received by Contractor from third parties, unless Company first agrees in writing to receive such information.

3.   **Background Technology.**  Contractor shall specifically describe and identify in the section entitled "Background Technology" in Exhibit A any and all technology, including without limitation information, materials and related intellectual property rights, that (a) Contractor intends to use in performing the work under this Agreement, (b) is either owned solely by Contractor or controlled by Contractor such that Contractor possesses the right to grant a license or sublicense thereunder, and (c) is in existence prior to the Effective Date ("***Background Technology***").  Contractor hereby grants to Company a nonexclusive, royalty-free, perpetual and worldwide right to use and sublicense the use of any Background Technology in connection with Company's business.

4.   **Ownership of Work Product.**  Contractor agrees that any and all ideas, developments, discoveries, improvements, inventions, works of authorship, or other work product of any type conceived, written, created or first reduced to practice in the performance of work under this Agreement, together with all intellectual property rights relating thereto ("***Work Product***") shall be the sole and exclusive property of Company.  Contractor hereby assigns to Company all its right, title and interest in and to any and all such Work Product.   Contractor further

2.

Doc ID: 25bd6f45520fb5cf200986d4a0f79dcbe64895a2

agrees that Company possesses and shall retain all right, title and interest in all of Contractor's Work Product under this Agreement.

Contractor further agrees to execute all papers, including without limitation all patent applications, invention assignments and copyright assignments, and otherwise assist Company as reasonably required to perfect Company's right, title and interest in Contractor's Work Product as expressly granted to Company under this Agreement. Such assistance shall include but not be limited to providing affidavits or testimony in connection with patent interference, validity or infringement proceedings and participating in other legal proceedings. Reasonable costs related to such assistance, if required, shall be paid by Company. Contractor's obligation to assist Company as described in this paragraph shall continue beyond the termination of this Agreement. If Company is unable, after reasonable effort, to secure Contractor's signature on any document as provided in this Section 4, Contractor hereby designates and appoints Company and its duly authorized officers and agents as its agent and attorney in fact, coupled with an interest, to execute, verify and file applications, and to do all other lawfully permitted acts necessary to achieve the intent of this Section 4 with the same legal force and effect as if executed by Contractor.

5. **Conflicting Engagements.** Contractor will notify Company in writing prior to entering into any employment or consulting arrangement with one or more third parties which involves either subject matter substantially similar to services Contractor is to provide hereunder or services which Contractor is to provide for the benefit of third parties who are engaged in Company's business anywhere in the world. During the term of this Agreement, Contractor shall not accept any employment or consulting work that conflicts with Contractor's obligations to Company hereunder or which may involve use or disclosure of Information other than as permitted hereunder.

6. **Term; Termination.** The term of this Agreement shall be as set forth in Exhibit A, unless previously terminated pursuant to this Section 6. Company may terminate this Agreement at any time and for any reason in the sole discretion of Company. In the event this Agreement is terminated, Contractor shall cease work immediately after receiving notice from Company, return all Information (including all copies thereof) as provided in Section 2(c), deliver all Work Product and related documentation to Company, and provide Company with an invoice for any work for which compensation has not already been paid. If compensation has been advanced to Contractor, Contractor shall reimburse any amounts for which work has not been performed prior to the date of the notice of termination. Sections 2, 3, 4, 6, 7, 8, 9, 10 and 11 shall survive the termination of this Agreement for any reason, including expiration of the term of this Agreement.

7. **Nonsolicitation.** Contractor agrees that during the term of this Agreement and for a period of one (1) year thereafter, Contractor will not, either directly or indirectly, (i) solicit, induce, recruit or encourage any employee or independent contractor of Company (a) to leave their employment or contracting relationship with Company or (b) to accept employment with any person or entity other than Company or (ii) solicit (other than on behalf of Company) any

3.

Doc ID: 25bd6f45520fb5cf200986d4a0f79dcbe64895a2

supplier, customer or business partner of Company (a) to terminate its relationship with Company or (b) to become a supplier, customer or business partner of any person or entity other than Company for matters competitive with or related to the Company's business. (iii) make any statement disparaging the other party, any member, principal, officer, director, shareholder, employee or agent thereof, to any person, firm, corporation, or other business organization whatsoever. (iv) will not publish information over the internet which may be used by another party to harm another.

8. **Warranties; Indemnification.** Contractor warrants:

(a)     Contractor shall perform its services in a timely, professional and workmanlike manner and consistent with industry standards in Contractor's field;

(b)     All materials supplied and work performed under this Agreement shall be provided or performed in compliance with all applicable laws and regulations; and

(c)     Contractor has good and marketable title to the Work Product, and the Work Product shall be free and clear of all liens, claims, encumbrances or demands of third parties, including any claims by any such third parties with respect to such third parties' intellectual property rights in the Work Product.

(d)     The Services will comply with all specifications and acceptance criteria set forth in the Statement of Work. The Contractor will meet the timeframes and milestones agreed to before starting each feature or sprint. Payment will only be due upon receipt of deliverables specified in the timeline.

(e)     The contractor warrants that the functions contained in work for hire will meet the requirements by the company and will be uninterrupted and error free. Contractor assumes all responsibility for quality of work and for the results obtained from the finished product.

Contractor shall indemnify, defend and hold harmless Company and its officers, agents, directors, employees, and customers from and against any claim, liability, loss, judgment or expense (including reasonable attorneys' and expert witnesses' fees and costs) resulting from or arising out of any breaches of such warranties, including without limitation claims by any third parties.

9. **Independent Contractor.**

(a)     Contractor is and shall remain at all times an independent contractor.  For greater certainty, Company shall not be bound in any manner whatsoever by any agreement, warranties or representations made by Contractor to any other person, firm or corporation or by any action of Contractor, except where Contractor has first obtained the prior written consent of Company.  Nothing contained in this Agreement is intended to create

4.

nor shall be construed as creating an employment relationship between Contractor and Company.

(b)    Contractor recognizes that Contractor has the sole responsibility as an independent contractor to comply with all requirements of applicable laws, rules, and regulations.

(c)    For all purposes, including but not limited to the Federal Insurance Contributions Act ("**FICA**"), the Social Security Act, the Federal Unemployment Tax Act ("**FUTA**"), income tax withholding and any and all other federal, state and local laws, rules and regulations, Contractor shall be treated as an independent contractor and not as an employee with respect to Company.

(d)    Contractor acknowledges and agrees that Contractor shall be responsible (as a self-employed person) for filing all tax returns, tax declarations and tax schedules, and for the payment of all taxes required, when due, with respect to any and all compensation earned by Contractor under this Agreement.  Company will neither pay unemployment taxes on, nor withhold employment taxes from, any compensation it pays Contractor. Rather, Company will report the amounts it pays Contractor on IRS Forms 1099, to the extent required to do so under applicable Internal Revenue Code provisions. Contractor also shall indemnify and hold Company harmless against any and all liabilities attributable to the obligations imposed on Contractor under this Section 9.

(e)    As an independent contractor, Contractor shall not be entitled to any employment related benefits other than as set forth in this Agreement, nor to vacation pay. With the exception of the compensation described in Exhibit A, Contractor shall have no claim or cause of action against Company for any cause, matter or thing including, without limitation, any claim or cause of action arising out of any alleged employment relationship between Contractor and Company (which specifically includes any claim for notice, pay in lieu of notice, severance or vacation pay, whether arising by statute or otherwise).  It is agreed that the provisions of this Section 9 shall survive the termination of this Agreement and shall remain binding on Contractor.

10.  **Legal And Equitable Remedies.**  Contractor hereby acknowledges and agrees that in the event of any breach of this Agreement by Contractor, including, without limitation, the actual or threatened disclosure of Information without the prior express written consent of Company, Company will suffer an irreparable injury, such that no remedy at law will afford it adequate protection against, or sufficient compensation for, such injury.  Accordingly, Contractor hereby agrees that Company shall be entitled to specific performance of Contractor's obligations under this Agreement, as well as such further relief as may be granted by a court of competent jurisdiction.

11.  **General.**  The Parties' rights and obligations under this Agreement will bind and inure to the benefit of their respective successors and assigns.  Contractor may not delegate, assign or subcontract any of Contractor's obligations or rights under this Agreement without Company's

Doc ID: 25bd6f45520fb5cf200986d4a0f79dcbe64895a2

prior written consent.  Company may assign its rights and obligations under this Agreement. This Agreement and Exhibit A attached hereto and hereby incorporated herein, constitute the Parties' final, exclusive and complete understanding and agreement with respect to the subject matter hereof, and supersede all prior and contemporaneous understandings and agreements relating to its subject matter.   This Agreement may not be modified or amended unless mutually agreed upon in a signed writing by both Parties.   No provision of this Agreement may be waived unless agreed in a signed writing by the Party against which such waiver is charged.   In the event any provision of this Agreement is found to be legally unenforceable, such unenforceability shall not prevent enforcement of any other provision of the Agreement.

The laws of the State of California, excluding its conflicts of laws principles, shall govern this Agreement.  Both Parties expressly consent to the jurisdiction and venue of the state and federal courts located in San Diego County, California for any lawsuit filed there arising from or relating to this Agreement or Contractor's services.   Contractor agrees that the state and federal courts located in San Diego County, California shall be the exclusive forum for any lawsuit or similar proceeding brought by Contractor against Company arising from or relating to this Agreement or Contractor's services.

No failure or delay of any Parties to insist upon strict performance of any of its rights or powers under this Agreement shall operate as a waiver thereof, nor shall any other single or partial exercise of such right or power preclude any other further exercise of any rights or remedies provided by law unless agreed to by such Party in writing. Any waiver by a Party of the breach by the other Party of this Agreement shall not operate or be construed as a waiver of any subsequent breach by either Party.  The headings appearing herein have been inserted solely for the convenience of the Parties hereto and shall not affect the construction, meaning or interpretation of this Agreement or any of its terms and conditions.   Any notices required or permitted hereunder shall be given to the appropriate Party at the address specified at the beginning of this Agreement or at such other address as the Party shall specify in writing. Such notice shall be deemed given either upon personal delivery, one (1) day after being sent by overnight delivery service, three (3) days after the date of mailing if sent by certified or registered mail, postage prepaid, or on the day of transmission by facsimile, provided that the notifying Party confirms receipt of such transmission with the other Party by telephone.   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute a single instrument.

Nothing in this Agreement shall be construed as granting any rights under any patent, copyright or other intellectual property right of the Company   nor shall this Agreement grant Consultant any rights in or to the Company's Confidential Information, except the limited right to use the Confidential Information in connection with the Services.

The execution and delivery of this Agreement shall not be deemed to confer any rights upon, nor obligate either of the Parties hereto to, or impose any obligations upon, any persons or entities not a Party to this Agreement.

6.

**[Signature Page]**

**IN WITNESS WHEREOF**, the Parties hereto have executed this Agreement as of the date first set forth above.

**COMPANY:**

**COMPANY NAME**

**SKYLAB APPS, INC**

By: _____
**(signature)**

_____

**Name:** _____Dean Grey_____.

**TITLE:** _____Founder, CEO_____.

**CONTRACTOR:**

By: _____
**(signature)**

_____Hung Luu Quoc_____.

**Company Name:** ___**HDWEBSOFT CO., Ltd**___

_____0311790992_____
**(Company ID Number)**

7.

## EXHIBIT A

**Work to be performed:**

Team Contracted to help develop Skylab Platforms (iOS, Droid, Web, backend API, and UX/UI) in both development and design.

The scope of work for the Skylab Platforms includes all planning, execution and implementation, for the new public-facing iOS app, Android app and Web interface and backend API. The selected Contractors will be responsible for the development and partial design of the Platform based on feedback to be provided by Skylab. Each stage of the project will require approval from Skylab management before moving on to the next stage. Specific deliverables and milestones will be listed out for you before you begin a specific Sprint on a project.

Code is to be documented, tested, and compiled on a regular basis.

Must follow our culture with VEAC (Vision, Expectation, Adjustments, Closing the Loop).

Deliverables to be readable as an aid to maintainability and scalability.

Deliverables Meet all defined criteria outlined in the Acceptance Criteria, Skylab Design Specs, Zeplin, and Invisionapp.

**initials** _____

**Background Technology (if any):**   See Independent Contractor Proprietary Information and Inventions Agreement

8.

Doc ID: 25bd6f45520fb5cf200986d4a0f79dcbe64895a2

**Term of Agreement:**  The term of this Agreement shall commence upon the Effective Date and shall expire upon written notice by either Party as outlined below.

The Company or the Contractor may terminate this Agreement in the following circumstances: the Contractor may, by giving one (30) days' prior written notice, terminate this Agreement for any reason or no reason at all and, except as set forth below, all obligations of the Company and the Contractor pursuant to this Agreement shall be terminated.  If Contractor fails to give a 30 day notice and quits unexpectedly, Contractors last pay will be held and not payable to Contractor.

The Company may, by giving written notice, terminate this Agreement for any reason at all (i.e., without Cause) by giving a 30 day notice, and, except as set forth below, all obligations of the Company and the Contractor pursuant to this Agreement shall be terminated.

At the election of the Company, the Company may terminate this Agreement at any time for Cause or failure to comply with Section 8 Warranties and Indemnifications, effective immediately and without notice.   The parties acknowledge that the following shall constitute "**Cause**" for the purposes of this section:

> (i)  any dishonest or fraudulent act of the Contractor against the Company;

> (ii) the committing by the Contractor of any intentional illegal conduct that is injurious to the Company or other affiliates or against or misappropriating the property of the Company;

> (iii)  intentional and material damage to the Company's property;

> (iv) wrongful disclosure of any trade secrets or other confidential information of the Company;  or

> (v) material breach of Contractor's Confidentiality and Invention Assignment Agreement.

> (vi) Contractor is indicted or convicted of a felony.

The Company may terminate this Agreement immediately and without notice upon the death or disability of Contractor.   As used in this Agreement, the term "disability" shall mean that Contractor shall have been unable to perform the work contemplated by this Agreement for a period of ten (10) consecutive days due to a physical or mental disability, whether or not his/her condition is certified by a medical practitioner.  A determination of disability shall be made by a physician reasonably satisfactory to the Company.

9.

If Company terminates this Agreement without Cause, Contractor will be entitled to be paid any outstanding unpaid fees, and all other fees and benefits to the Contractor under this Agreement shall cease as of the date of termination. If Company terminates this Agreement for Cause (as set forth above and in Section 8 Warranties and Indemnifications) at any time, or if Contractor terminates this Agreement without giving a thirty (30) day notice for any reason or no reason at all, all fees and other benefits to the Contractor under this Agreement shall cease as of the date of termination and any invoices that are payable are held and will not be payable to Contractor.

**Type or rate of payment:**

• Each Contractor will receive $2,640.00 per month.

• This is a fixed rate per contractor as long as the contractor is working full time.

• As of the date of this contract we have 13 contractors working at a rate of $34,320.00 per month along with a 10% discount tacked on leaving us with a total of $30,888.00 per month.

• Rate and number of contractors can be negotiated and adjusted in written form including electronic transaction.

**Restriction :** For payment to be made contractors must meet the work agreed upon for each sprint.

**Payment Terms:**

•      Contractor shall submit invoices to Company upon completion of production release of Android, Web, and CMS platforms.  Payment of invoice will be made within 2 weeks of the date last invoice was submitted.

•      All costs for local transportation, phones and/or meals are included in Contractor's rate and are not reimbursable.

All reimbursable expenses must be appropriately documented in reasonable detail, and in a format and manner consistent with Company's expense reporting policy and requested in writing beforehand. No reimbursement will be granted unless given permission verbally or in writing before said reimbursement is executed.

**Referral Terms:** For every referral in which Skylab refers, Skylab will receive credit in the amount of the    surplus for anything over $15.00 per hour.

Initials Company                                        Initials Contractor

Doc ID: 25bd6f45520fb5cf200986d4a0f79dcbe64895a2

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Independent Contractor Service Agreement |
| **FILE NAME** | Vietnam Team-I.C_... (w- clause) .pdf |
| **DOCUMENT ID** | 25bd6f45520fb5cf200986d4a0f79dcbe64895a2 |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| **SIGNED** | 01/21/2016<br>10:41:43 UTC-8 | Signed by Dean Grey (contact@skylabapps.com)<br>IP: 99.165.44.213 |
| **SENT** | 01/21/2016<br>10:41:49 UTC-8 | Sent for signature to Hung Luu Quoc (hunglq@hdwebsoft.com)<br>IP: 99.165.44.213 |
| **VIEWED** | 01/21/2016<br>17:59:53 UTC-8 | Viewed by Hung Luu Quoc (hunglq@hdwebsoft.com)<br>IP: 171.250.111.149 |
| **SIGNED** | 01/21/2016<br>18:03:43 UTC-8 | Signed by Hung Luu Quoc (hunglq@hdwebsoft.com)<br>IP: 171.250.111.149 |
| **COMPLETED** | 01/21/2016<br>18:03:43 UTC-8 | The document has been completed. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 2



# INVOICE

**DATE**                Aug 1st 2016 To Aug 31st 2016
**INVOICE #**                  SKYLAB-00010

**HDWEBSOFT Co., Ltd**
**Address :** HDWebsoft, Room 8, House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam.
**Phone :** 0918.870270
**Email:** hunglq@hdwebsoft.com
**Website:** www.hdwebsoft.com

## Wire Transfer info

Account No : 140414851030058
Account Name : HDWEBSOFT Co., Ltd
Bank name: VIET NAM EXPORT IMPORT BANK
Bank Address : 07 Le Thi Hong Gam st .District 1 HCM City VN
Swift Code : EBVIVNVXCHA
Bank Postal code : 70000

**BILL TO**
Skylab Apps Inc
6440 sky pointe DR,STE 140-101 Las Vegas, Nevada 89131 USA

| DESCRIPTION | TOTAL HOUR | AMOUNT |
|---|---|---|
| 22 developers x $2400 | | 52800 |
| | | |
| | | |
| | | |
| | | |
| Total | 0 | 52,800.00 |

| | |
|---|---|
| Subtotal | |
| Discount | |
| Paid | 0 |
| Tax rate | |
| Tax due | |
| Total Amount | 52.800 USD |

**OTHER COMMENTS**

If you have any questions about this invoice, please contact : hunglq@hdwebsoft.com

*Thank You For Your Business!*



# INVOICE

**DATE**        From July 1st 2016 To July 31st 2016
**INVOICE #**      SKYLAB-00009

**HDWEBSOFT Co., Ltd**
**Address** : HDWebsoft, Room 8, House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam.
**Phone** : 0918 870270
**Email:** hunglq@hdwebsoft.com
**Website:** www.hdwebsoft.com

## Wire Transfer info

Account No . 14041485103005 8
Account Name : HDWEBSOFT Co., Ltd
Bank name : VIET NAM EXPORT IMPORT BANK
Bank Address : 07 Le Thi Hong Gam st ,District 1 HCM City VN
Swift Code : EBVIVNVXCHA
Bank Postal code : 70000

**BILL TO**
Skylab Apps Inc
6440 sky pointe DR.STE 140-101 Las Vegas, Nevada 89131 USA

| DESCRIPTION | TOTAL HOUR | AMOUNT |
|---|---|---|
| 14 developers x $2400 | | 33600 |
| 8 developers/ month x $2400 | | 9600 |
| | | |
| | | |
| | | |
| | | |
| Total | 0 | **43,200.00** |

|  |  |
|---|---|
| Subtotal | |
| Discount | |
| Paid | **0** |
| Tax rate | |
| Tax due | |
| **Total Amount** | 43,200 USD |

**OTHER COMMENTS**

If you have any questions about this invoice. please contact : hunglq@hdwebsoft.com

*Thank You For Your Business!*



# INVOICE

DATE
INVOICE #

From June 1st 2016 To June 30th 2016
SKYLAB-00008

**HDWEBSOFT Co., Ltd**
**Address** : HDWebsoft, Room 8. House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam.
**Phone** : 0918 870270
**Email:** hunglq@hdwebsoft.com
**Website:** www.hdwebsoft.com

## Wire Transfer info

Account No : 140414851030058
Account Name : HDWEBSOFT Co., Ltd
Bank name : VIET NAM EXPORT IMPORT BANK
Bank Address : 07 Le Thi Hong Gam st ,District 1 HCM City VN
Swift Code :EBVIVNVXCHA
Bank Postal code : 70000

**BILL TO**
Skylab Apps Inc
**6440 sky pointe DR.STE 140-101 Las Vegas, Nevada 89131 USA**

| DESCRIPTION | TOTAL HOUR | AMOUNT |
|---|---|---|
| 13 developers x $2400 | | 31200 |
| | | |
| | | |
| | | |
| | | |
| Total | 0 | 31,200.00 |

| | |
|---|---|
| Subtotal | |
| Discount | |
| Paid | 0 |
| Tax rate | |
| Tax due | |
| Total Amount | 31.200 USD |

**OTHER COMMENTS**

If you have any questions about this invoice, please contact : hunglq@hdwebsoft.com

*Thank You For Your Business!*



# INVOICE

**DATE** May 1st 2016 To May 31th 2016
**INVOICE #** SKYLAB-00007

**HDWEBSOFT Co., Ltd**
**Address** : HDWebsoft, Room 8, House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam.
**Phone :** 0918 870270
**Email:** hunglq@hdwebsoft.com
**Website:** www.hdwebsoft.com

## Wire Transfer info

Account No : 14041485103058
Account Name : HDWEBSOFT Co., Ltd
Bank name : VIET NAM EXPORT IMPORT BANK
Bank Address : 07 Le Thi Hong Gam st ,District 1 HCM City VN
Swift Code :EBVIVNVXCHA
Bank Postal code : 70000

**BILL TO**
**Skylab Apps Inc**
**6440 sky pointe DR.STE 140-101 Las Vegas, Nevada 89131 USA**

| DESCRIPTION | TOTAL HOUR | AMOUNT |
|---|---|---|
| 13 developers x $2400 | | 31200 |
| | | |
| | | |
| | | |
| | | |
| | | |
| Total | 0 | **31,200.00** |

| | |
|---|---|
| Subtotal | |
| Discount | |
| Paid | 0 |
| Tax rate | |
| Tax due | |
| **Total Amount** | 31.200 USD |

**OTHER COMMENTS**

f you have any questions about this invoice, please contact : hunglq@hdwebsoft.com

*Thank You For Your Business!*



# INVOICE

| | |
|---|---|
| **DATE** | April 1st 2016 To April 30th 2016 |
| **INVOICE #** | SKYLAB-00006 |

**HDWEBSOFT Co., Ltd**
**Address** : HDWebsoft, Room 8, House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam.
**Phone** : 0918 870270
**Email:** hunglq@hdwebsoft.com
**Website:** www.hdwebsoft.com

## Wire Transfer info

Account No : 140414851030058
Account Name : HDWEBSOFT Co., Ltd
Bank name : VIET NAM EXPORT IMPORT BANK
Bank Address : 07 Le Thi Hong Gam st ,District 1 HCM City VN
Swift Code :EBVIVNVXCHA
Bank Postal code : 70000

**BILL TO**

Skylab Apps Inc
**6440 sky pointe DR,STE 140-101 Las Vegas, Nevada 89131 USA**

| DESCRIPTION | TOTAL HOUR | AMOUNT |
|---|---|---|
| 13 developers x $2400 | | 31200 |
| | | |
| | | |
| | | |
| | | |
| | Total          0 | **31,200.00** |

| | |
|---|---|
| Subtotal | |
| Discount | |
| Paid | 0 |
| Tax rate | |
| Tax due | |
| **Total Amount** | 31,200 USD |

**OTHER COMMENTS**

If you have any questions about this invoice, please contact : hunglq@hdwebsoft.com

*Thank You For Your Business!*



# INVOICE

| | |
|---|---|
| **DATE** | March 1st 2016 To March 31st 2016 |
| **INVOICE #** | SKYLAB-00005 |

**HDWEBSOFT Co., Ltd**
**Address** : HDWebsoft, Room 8, House 2, Quang Trung Software Park, Tan Chanh Hiep Ward, District 12, Ho Chi Minh City, Vietnam.
**Phone** : 0918.870270
**Email:** hunglq@hdwebsoft.com
**Website:** www.hdwebsoft.com

## Wire Transfer info

Account No : 140414851030058
Account Name : HDWEBSOFT Co ,.Ltd
Bank name : VIET NAM EXPORT IMPORT BANK
Bank Address : 07 Le Thi Hong Gam st ,District 1 HCM City VN
Swift Code: EBVIVNVXCHA
Bank Postal code : 70000

**BILL TO**
Skylab Apps Inc
**6440 sky pointe DR,STE 140-101 Las Vegas, Nevada 89131 USA**

| DESCRIPTION | TOTAL HOUR | AMOUNT |
|---|---|---|
| 13 developers x $2400 | | 31200 |
| | | |
| | | |
| | | |
| | | |
| Total | 0 | 31,200.00 |

| | |
|---|---|
| Subtotal | |
| Discount | |
| Paid | 0 |
| Tax rate | |
| Tax due | |
| Total Amount | 31,200 USD |

**OTHER COMMENTS**

If you have any questions about this invoice, please contact : hunglq@hdwebsoft.com

*Thank You For Your Business!*